UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 21 Cr. 73-1 (BAH) |
| v. | : | |
| NICHOLAS DECARLO | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO**
**DISMISS COUNTS ONE AND TWO**

**INTRODUCTION**

The Government alleges that on January 6, 2021, Nicholas DeCarlo (along with his co-defendant Nicholas Ochs) entered the United States Capitol, traversed the building, and then left approximately an hour and a half later. Although the Government alleges that while inside of the Capitol the defendant committed two misdemeanors (theft and destruction of property), it is undisputed that Mr. DeCarlo never entered the Senate chamber. He was not armed, nor part of any organized group of violent protestors. Nonetheless, Mr. DeCarlo is charged in Count One and Count Two of the pending Indictment with conspiring to corruptly "obstruct, influence, and impede" an "official proceeding," that is, Congress' certification of the 2020 Presidential election, in violation of 18 U.S. C. Section 1512(c)(2). For both of the following independent reasons, the Court should dismiss these two counts pursuant to Federal Rule of Criminal Procedure 12(b)(1).

First, as a matter of law, the "certification" of the electoral votes was not an "official proceeding" within the meaning of the criminal statute. Despite its importance, the January 6, 2021 session was at best a "ministerial" or "ceremonial" proceeding, whose purpose was limited to the tabulation of the state electoral college votes and announcement of the winner. See

1

Statement of Senator Charles Schumer (D. N.Y): electoral vote certification was "a solemn and august occasion, no doubt, but **it is a formality**." *Congressional Record* Volume 167, No. 4 (Senate January 6, 2021)(emphasis added) at p. S16.

Counts One and Two must also be dismissed because the obstruction statute is void for vagueness as applied to the facts of this case. As explained herein, neither the plain language of the statute, nor the circumstances under which it has been previously applied, would have given the defendant the constitutionally required notice that his conduct – entering the Capitol building and then leaving - could constitute an effort to "corruptly" obstruct the Senate's vote certification. See Johnson v. United States, 576 U.S. 591, 594 (2015)(the Government violates a defendant's due process rights when it takes away their life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes). This principle applies with particular force to the facts of this case because the Government has acknowledged that Mr. DeCarlo conspired only with his co-defendant Nicholas Ochs, and not with the hordes of other persons who entered the Capitol on January 6, 2021.

## BACKGROUND

**Certification Of The Electoral Vote**

In order to place Mr. DeCarlo's conduct into context, it is necessary to provide an overview of the Presidential electoral vote certification process. The procedures are set forth both in the Constitution and statute.

As a preliminary matter, it is noteworthy that the provisions concerning the certification of the electoral vote are not part of Congress' enumerated powers in Article I. Rather, the general procedures for electing the President and Vice President of the United States are outlined in Article 2 (Executive power), Section 1 of the Constitution, which provides in relevant part that

every four years electors in each state (apportioned in the same manner as members of the House and Senate) shall meet in their respective States and cast their ballots for President and Vice President. The precise language of the Constitution states as follows:

> The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected, as follows: Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress . . . .
>
> The Electors shall meet in their respective States, and vote by Ballot for two Persons, of whom one at least shall not be an Inhabitant of the same State with themselves. And they shall make a List of all the Persons voted for, and of the Number of Votes for each; which List they shall sign and certify, and transmit sealed to the Seat of the Government of the United States, directed to the President of the Senate. The President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted. The Person having the greatest Number of Votes shall be the President . . . .

In 1948, Congress passed enabling legislation to establish more specific protocols for counting the States' electoral votes. Title 3 United States Code Section 15 provides for a two-step process. In the first step – which is the only part relevant to this criminal prosecution - Congress convenes in a Joint Session on the sixth of January that follows the election. Two "tellers" appointed each by the Senate and the House of Representatives open the certified votes of each of the States in alphabetical order.[1] The tellers then tabulate the totals, which are delivered to the President of the Senate, who announces the winner. The statute provides in more complete detail that:

> Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall meet in the Hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and the President of the Senate shall be their presiding officer. Two tellers shall be previously appointed on

---

[1] The second "step" of the process only takes place when there is an "objection" to the vote certification lodged by one member of the House of Representatives and one member of the Senate. The defendant DeCarlo is charged with conspiring to obstruct "Congress' certification of the vote count," not the objections to the count (which would appear to have been the object of the charged conspiracy).

3

the part of the Senate and two on the part of the House of Representatives, to whom shall be handed, as they are opened by the President of the Senate, all the certificates and papers purporting to be certificates of the electoral votes, which certificates and papers shall be opened, presented, and acted upon in the alphabetical order of the States, beginning with the letter A; and said tellers, having then read the same in the presence and hearing of the two Houses, shall make a list of the votes as they shall appear from the said certificates; and the votes having been ascertained and counted according to the rules in this subchapter provided, the result of the same shall be delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States, and, together with a list of the votes, be entered on the Journals of the two Houses.

The Joint Session was thus convened on January 6, 2021 for the administrative purpose of formally counting the electoral votes. The members of Congress and the Vice President assembled to watch – and then dutifully record – the vote tabulation.

**1. Defendant Nicholas DeCarlo And The Events Of January 6, 2021**

*A. The Legal Standard For A Pre-Trial Motion To Dismiss*

This Court has jurisdiction to resolve the defendant's motion to dismiss. Pursuant to Federal Rule of Criminal Procedure 12(b)(1), a party may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." The rule specifically provides that "objections that a criminal charge fail[s] to state an offense must be raised by pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(internal quotations omitted).

As this Court has previously noted:

> In ruling on a pretrial motion to dismiss the trial court must presume the truth of the facts alleged in the charging instrument, United States v. Park, 938 F.3d 354, 358 (D.C. Cir. 2019), and may accept any "undisputed facts" proffered by the government, United States v. Yakou, 428 F.3d 241, 247 (D.C. Cir. 2005) (explaining that "undisputed facts obviate[ ] the need for [a] district court to make factual determinations properly reserved for a jury").

4

United States v. Barnes, 481 F.Supp. 3d 15 (D.D.C. 2020)(Howell, C.J.). Accord United States v. Hitselberger, 991 F. Supp. 2d 86, 90 (D.D.C. 2013)(Contreras, J.)(Fed. R. Crim. P. 12(b) allows a party to "raise by pretrial motion any defense. . . that the court can determine without a trial of the general issue"). In this case, even accepting as true the allegations contained in the Indictment, Counts One and Two fail to state a cognizable criminal charge.

### B. *The Factual Allegations Against The Defendant*

Assuming the truth of the allegations therein, the operative paragraphs of the Indictment in this case allege as follows:

> 24.  On January 6, 2021, DeCARLO and OCHS, and other individuals both known and unknown to the Grand Jury, entered the Capitol building shortly after it was breached by the first wave of unauthorized persons who entered the Capitol building.
>
> 25.  On January 6, 2021, DeCARLO and OCHS, and other individuals both known and unknown to the Grand Jury, traveled throughout and occupied the Capitol building after the Capitol had been breached.
>
> 26.  On January 6, 2021, DeCARLO and OCHS posted photographs and videos to social media depicting their actions inside of the U.S. Capitol building in real time.
>
> 27.  On January 6, 2021 at some point after entering the Capitol grounds without authorization, DeCARLO and OCHS defaced the Memorial Door of the Capitol by inscribing [with a magic marker] the words "MURDER THE MEDIA" [the name of their media company] on the door.
>
> 28.  On January 6, 2021, at some point after entering the Capitol grounds without authorization, DeCARLO and OCHS stole a pair of flex handcuffs belonging to the United States Capitol Police.

See DE 17 (Indictment). Prior to filing the pending motion, undersigned submitted a request for a Bill of Particulars concerning the identity of any co-conspirators (both known or unknown). The Government responded in writing that the two defendants in this case are alleged to have conspired only with each other, subject to any "further investigation."

5

In summary, the defendant is alleged to have entered the Capitol building, committed two misdemeanors inside, and then left. The Government does not allege that DeCarlo entered the Senate chamber - or any Congressional office. It does not allege that he was armed with a weapon, or that he conspired with anyone other than his co-defendant. The Indictment does not specify – directly, indirectly, or by implication – how the two men traversing the Capitol building, corruptly obstructed the Joint Session of Congress.

## LEGAL ANALYSIS

1. **The Electoral College Vote Certification Was Not An "Official Proceeding"**

Defendant DeCarlo is charged in Counts One and Two with conspiring to "corruptly obstruct, influence and impede any official proceeding, to wit, Congress' certification of the Electoral College vote," in violation of 18 United States Code 1512(c)(2). [2] In turn, Section 1515(a) (1) defines an official proceeding as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law. . . . [3]

The courts that have considered the application of this criminal statute have limited the scope of what constitutes a "proceeding" to matters that involve some evidentiary function. In

---

[2] Count One charges a violation of the general conspiracy statute, 18 U.S. Code Section 371, with obstruction of the vote certification as its object, in violation of 18 U.S. Code Section 1512(c)(2). Count Two charges a conspiracy to violate the substantive offense.

[3] This Section was enacted as part of the Sarbanes–Oxley Act of 2002, Pub.L. No. 107–204, § 1102, 116 Stat. 745, 807 (2002). See United States v. Perez, 575 F.3d 164, 167 (2d Cir. 2009). *Sarbanes-Oxley* was passed in response to the Supreme Court's decision in Arthur Anderson LLP v. United States, 544 U.S. 696 (2005), which reversed the corporation's conviction for obstruction of justice, which involved shredding documents to be used in an official proceeding.

United States v. Ermoian, 752 F.3d 1165 (9th Cir. 2013), for example, the Court concluded that a "proceeding" does not include a criminal investigation, reasoning that:

> Examining the term "proceeding" within the grammatical structure of the definition at issue, it becomes clear that **the term connotes some type of formal hearing**. The statute refers to proceedings "before a Federal Government agency"—a choice of phrase that would be odd if it were referring to criminal investigations. *Id.* The use of the preposition "before" suggests an appearance in front of the agency sitting as a tribunal. As the Fifth Circuit explained when addressing this same definition, "use[ of] the preposition 'before' in connection with the term 'Federal Government agency' ... implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency."
>
> . . . . . . . . . .
>
> The use of the terms "attendance", "testimony", "production", and "summon[ ]" when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated.

Ermoian, 752 F.3d at 1171-72 (emphasis added).

Similarly, in United States v. Ramos, 537 F.3d 439, 462-463 (5th Cir. 2008), the Court of Appeals examined the structure of the statute and concluded that the term "official proceeding" of necessity "involves some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency." In United States v. Dunn, 434 F.Supp. 2d 1203, 1207 (M.D. Ala 2006), the district court concluded that an investigation by the Department of Alcohol, Tobacco and Firearms was not an official proceeding. The court specifically rejected the Government's contention that an investigation was an official proceeding, noting that:

> the common and ordinary understanding of "proceeding" connote a hearing, see Black's Law Dictionary 1221 (7th Ed.1999) (defining "proceeding" as a hearing or any procedural means for seeking redress from a tribunal or agency), but the term "proceeding" is also used throughout § 1515(a)(1) to describe events that are best thought of as hearings (or something akin to hearings): **for example, federal court cases, grand**

7

> **jury testimony, Congressional testimony,** and insurance regulatory hearings, 18 U.S.C. § 1515(a)(1)(A), (B), & (D).

Dunn, 434 F.Supp.2d at 1207. Accord United States v. Binette, 828 F.Supp.2d 402 (D.Mass. 2011)("official proceeding" does not include a "preliminary investigation" conducted by the Securities Exchange Commission because no action took place "before" the agency).

In this case, the Joint Session of Congress that convened on January 6, 2021 (in accordance with Title 3 United States Code Section 15) did not have any fact finding, testimonial, or investigative purpose. Congress did not convene to consider legislation or perform any other of its enumerated powers. Rather, as the following contemporaneous comments from members of both political parties on January 6, 2021 demonstrate, the Joint Session was ministerial or ceremonial. These comments, while not binding, are certainly probative of the *raison d'etre* for the Joint Session. See Federal Energy Administration v. Algonquin SNG, 426 U.S. 548, 564 (1976).

In addition to Senator (now Senate Majority Leader) Schumer's comment that the session was a "formality," Senator Mike Lee (R. AZ) succinctly noted that "[o]ur job is to open and then count. Open, then count--that is it. That is all there is. *Congressional Record* Volume 167, No. 4 (Senate January 6, 2021)(emphasis added) at p. S20. Likewise, Senator Patrick Toomey (D. Pa.) explained when the session convened:

> The Constitution assigns to the States the responsibility to conduct elections. It is clear in article II, section 1. It leaves courts with the responsibility to adjudicate disputes, and it assigns to Congress **the ministerial function** of counting ballots . . . .

*Congressional Record* Volume 167, No. 4 (Senate January 6, 2021)(emphasis added) at p. S16. Finally, former Vice President Pence, who presided over the Joint Session announced its purpose when Congress convened:

> Madam Speaker, Members of Congress, pursuant to the Constitution and the laws of the United States, the Senate and House of Representatives are meeting in joint session to verify the certificates and count the votes of the electors of the several States for President and Vice President of the United States.

*Congressional Record,* Vol. 167, No. 4 (Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1; House of Representatives - January 06, 2021 at 115.

Under the totality of circumstances, this Court should conclude that the Joint Session of Congress held on January 6, 2021 was not a "official proceeding" as that term is defined in 18 United States Code Section 1512. At most it was a ministerial or ceremonial appearance. This conclusion does not minimize the gravity of the Joint Session or the importance of tabulating the States' electoral votes. Rather, it is a recognition that by using the term "official proceeding," Congress limited the scope of the criminal statute to proceedings that involvet more than a mere appearance by members of Congress. [4]

**2. The Obstruction Statute Is Void For Vagueness As Applied**

The requirement that a criminal statute give fair notice of what conduct it punishes is deeply engrained in our jurisprudence. In <u>Johnson v. United States</u>, 576 U.S. 591, 595-96 (2015), the Court noted that:

---

[4] The conclusion that not all actions taken by a legislative body constitute an "official proceeding" also finds support in caselaw concerning decisions by administrative agencies. In the context of the "final order" rule for appellate review, federal courts have concluded that some administrative proceedings are solely "ministerial" in nature. For example, in <u>In Re Gould & Eberhardt Gear Machinery Corp</u>., 852 F.2d 26 (1st Cir. 1988), the Court noted that the "computation of amount pursuant to an established formula" is a ministerial proceeding. <u>Accord In Re St. Charles Preservation Investors, Ltd.</u>, 916 F.2c 727 (D.C. Cir. 1990)( a district court order of remand may be considered final where the remand leaves solely "ministerial" proceedings to be conducted by the bankruptcy court).

> The prohibition of vagueness in criminal statutes "is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process."

The void for vagueness doctrine protects two fundamental concepts in American jurisprudence: fairness and protection against arbitrary law enforcement:

> Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." . . . . Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

Kolender v. Lawson, 461 U.S. 352, 357–58 (1983)(internal citations omitted).

In this case, the defendant is charged with "corruptly obstruct, influence and impede" the electoral vote certification. The use of the term "corruptly" in criminal statutes has consistently been held to raise notice/vagueness problems. Thus, in United States v. Poindexter, 951 F.2d 369 (D.C. Cir. 1991), the Government alleged that the defendant "did corruptly influence, obstruct and impede congressional inquiries" by, among other things, making false and misleading statements to Members of the Congress.  951 F.2d at 377 (internal quotations omitted). The Court of Appeals was specifically concerned by the use of the verb "corruptly" in the statute.

> We must acknowledge that, on its face, the word "corruptly" is vague; that is, in the absence of some narrowing gloss, people must "guess at its meaning and differ as to its application."

Id. at 378. The Court extensively reviewed the statute's legislative history and how it had been applied in other cases and concluded that it was impossible to sufficiently narrow the scope of what allegedly corrupt behavior would run afoul of the statute. The Court noted that while some "core" corrupt behavior, such as bribery, would fall within the statute's ambit, the act of lying was not necessarily included in the statute's reach. It reversed the conviction because the

10

"statute is unconstitutionally vague as applied" to the defendant's conduct. Id. 405-06.

In United States v. Bonds, 784 F.3d 582 (9th Cir. 2015), the Ninth Circuit reversed the conviction of former baseball player Barry Bonds, who was charged with "corruptly" obstructing justice for giving what was described as rambling, non-responsive answers to questions during his grand jury testimony. Although the Court of Appeals reversed the conviction on the grounds that the responses were not "material," the Court took the opportunity to consider the grave problems posed by the risk of criminalizing allegedly "corrupt" behavior.

> As should be apparent, [the obstruction statute's] coverage is vast. By its literal terms, it applies to all stages of the criminal and civil justice process, not just to conduct in the courtroom but also to trial preparation, discovery and pretrial motions. . . .
>
> Stretched to its limits, [the statute] poses a significant hazard for everyone involved in our system of justice, because so much of what the adversary process calls for could be construed as obstruction. Did a tort plaintiff file a complaint seeking damages far in excess of what the jury ultimately awards? That could be viewed as corruptly endeavoring to "influence ... the due administration of justice" by seeking to recover more than the claim deserves. So could any of the following behaviors that make up the bread and butter of litigation: filing an answer that denies liability for conduct that is ultimately adjudged wrongful or malicious; unsuccessfully filing (or opposing) a motion to dismiss or for summary judgment; seeking a continuance in order to inflict delay on the opposing party; frivolously taking an appeal or petitioning for certiorari—the list is endless.

784 F.3d at 583-84.

In this case, the Government alleges that Mr. DeCarlo (and his co-defendant Nicholas Ochs) conspired to "corruptly" influence, obstruct and impede the vote certification – by walking through the Capitol building on the day of the joint session of Congress on January 6, 2021. As noted, in response to a request for a Bill of Particulars the Government responded that Messrs. DeCarlo and Ochs were alleged to have conspired only with each other. Thus, the scope of the their alleged conspiratorial criminal conduct is limited to their own actions. It is undisputed that the defendants did not enter the Senate chamber, did not stand outside – or inside – the gallery

11

and scream, or even so much as loudly bang on the door. It is almost certain that no single member of Congress was aware of their actual presence in the building.

Similarly, the Government has not alleged in the Indictment that the defendants violated any of the "core" behavior prohibited by the statute, such as suborning the vote certification through bribery or other malfeasance. There is no allegation that they obstructed or impeded the tabulation of the electoral college vote by threats or actual violence. Rather, the Government is attempting to hold the defendants criminally liable as a result of their mere presence in the building. No fair reading of the plain language of the obstruction statute, however, would give a person of ordinary intelligence fair notice that walking through the Capitol building under these circumstances would be considered "corruptly" influencing, impeding, or obstructing the vote certification. No doubt the defendants were fairly on notice that entering the Capitol building was a trespass, but the distance between unlawful entry and obstruction of justice is too vast a distance to be bridged by the vague language of 18 U.S.C. Section 1512(c)(2). Accordingly, this Court should conclude that the statute as applied to the defendant's conduct is void for vagueness and Counts One and Two should be dismissed. [5]

**CONCLUSION**

For all of the foregoing reasons the defendant respectfully requests that this Court dismiss Counts One and Two of the Indictment. The defendant does not ask for this relief lightly and this motion is not meant to minimize or excuse the events of January 6, 2021. But the horrific nature

---

[5] In addition, the manner in which this criminal statute has been used in charging decisions by the U.S. Attorney's Office for the District of Columbia with respect to the more than seven hundred persons charged as a result of the events of January 6, 2021 is so inconsistent that it raises the very serious specter of unfettered prosecutorial discretion. Large numbers of defendants who entered the Capitol building with weapons were not charged with obstructing the electoral vote certification. Other defendants whose conduct more closely mirrors that of Messrs. DeCarlo and Ochs were only charged with misdemeanor unlawful entry. Undersigned counsel can prepare a summary of the cases if it would assist in the Court's analysis of the pending motion

of the attack on the Capitol is not a license for the Government to prosecute these offenses against Mr. DeCarlo.

                Respectfully submitted,

                *Robert Feitel*

                _____
                Robert Feitel, Esquire
                1300 Pennsylvania Avenue, N.W.
                Washington, D.C.  20004
                D.C. Bar No. 366673
                202-255-6637 (cellular)
                202-450-6133 (office)
                RF@RFeitelLaw.com

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was sent via ECF to Assistant United States Attorney (detailee) Alexis Loeb, 555 4th Street, N.W. Washington, D.C. this 10th day of December, 2021 and to counsel for defendant Nicholas Ochs.

                *Robert Feitel*

                _____
                Robert Feitel