UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 21 Cr. 73-1 (BAH) |
| v. | : | Case No. 21 Cr. 73-2 (BAH) |
| NICHOLAS DECARLO | : | |
| and | : | |
| NICHOLAS OCHS | : | |
| Defendants. | : | |

**DEFENDANT DECARLO AND OCHS REPLY
IN SUPPORT OF MOTION FOR POST-CONVICTION RELIEF**

**INTRODUCTION**

The Government opposes the defendants' motion for pre-trial release pending the resolution of their habeas petition, arguing that notwithstanding the clear mandate of the Supreme Court's decision in *Fischer*, they cannot demonstrate "actual innocence" of the Obstruction of An Official charge against them. The Government is simply wrong and notwithstanding the prosecution's revisionist view of the facts of this case, there is insufficient evidence to establish that either defendant Nicholas DeCarlo or Nicholas Ochs intended to impair the "availability or integrity" of documents related to Congress' vote certification. As a result, the defendants' habeas claim should be allowed to proceed, notwithstanding the collateral challenge waiver in their plea agreements. While it is pending, they should both be released from custody and returned to their conditions of pre-trial release.

Before turning to the merits, however, the defense notes that the Government did not oppose the defendant's motion for release from custody in *United States v. Riley*, 21 Cr. 69, while his *habeas motion* was pending, notwithstanding the existence of an almost identical

1

waiver in plea agreement in that case. See DE 53. The Government's diametrically different positions with respect to what appear to be similarly situated defendants raises a question as to the reason for the disparate treatment.

## ANALYSIS

### 1. *The Defendants Are Actually Innocent*

It would be inconsistent with America's normative rules of justice to believe that a defendant who was actually innocent of a crime could remain incarcerated because of legal procedural hurdles. Thus, the Supreme Court has held that:

> actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, . . . . or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."

McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).

The Government argues before this Court that the defendants' *habeas* claim is barred because are both guilty of the Obstruction count. The Government bases its argument upon the following factual assertions:

> Ochs and DeCarlo do not carry their burden to clearly show that *no* reasonable jury would convict these two politically aware individuals (who followed the election, knew about the certification, hosted political shows on social media, and who explicitly acknowledged that they caused the proceeding to stop by storming the building), who sought to stop the certification, of engaging in conduct whose natural, probable, and actual consequence was to impair the availability of records, documents, objects, or other things—namely, the electoral certificates for President-Elect Biden that they did not want Congress to validate that day. **A jury could infer the defendants' intent vis-à-vis the certificates or other documents relating to the proceeding from evidence (including evidence of defendants' knowledge of election challenges and the certification process) that these defendants understood that the natural and logical consequence of attacking the officers and storming the Capitol would be to make the certificates unavailable to lawmakers, impairing their availability for use in the proceeding.**

Gov Opp. at pp 32-33 (emphasis added).

The gravamen of this summary is that a jury could somehow "infer" that the defendants had the intent to commit the Obstruction count – specifically with respect to records or documents – based upon the "evidence of defendants' knowledge of election challenges and the certification process." This is simply incorrect both as a matter of fact and as a matter of law. First, the Government does not – and cannot – identify a single statement made by either defendant that directly relates to documents used in the vote certification. There is no evidence of record in this case (and certainly no facts contained in the plea agreement) that defendants DeCarlo and Ochs had any specific knowledge of the vote certification process and the use of documents therein. The Government's attempted attribution of this knowledge because the defendants were "politically aware individuals" is nothing more than speculation and should be given no weight by this Court.

Second, the Government's argument that making the electoral college certificates "unavailable" to lawmakers was a "natural and probable" consequence of the defendant's conduct is nothing more than a regurgitation of the argument rejected by the *Fischer* court – that mere presence at the Capitol was sufficient to sustain the Obstruction charge.[1] This theory of

---

[1] In the *Fischer* decision, the Supreme Court noted that the defendant's conduct (along with that of others) caused the proceedings to adjourn and delayed the certification process:

> This case concerns the prosecution of petitioner Joseph Fischer for his conduct on January 6, 2021. That day, both Houses of Congress convened in a joint session to certify the votes in the 2020 Presidential election. While they did so, a crowd of supporters of then-President Donald Trump gathered outside the Capitol. As set forth in the criminal complaint against Fischer, some of the crowd eventually "forced entry" into the building, "breaking windows," and "assaulting members of the U. S. Capitol Police." . . . This breach of the Capitol caused Members of Congress to evacuate the Chambers and delayed the certification process. The complaint alleges that Fischer was one of those
> who invaded the building.

*Fischer*, 2024 WL 3208034 at *3.

imputed intent would appear to apply to every other person who was present at the Capitol on January 6. 2021, but the Government has dismissed numerous other 1512(c)(2) charges since the *Fischer* decision.

Against this factual background, the defendants are factually innocent.

### 2. *The Government Did Not Forego More Serious Charges*

In United States v. Bousley, 523 U.S. 614 (1998), the Supreme Court noted that when a defendant raises a claim of factual innocence in a habeas action, the accused must also establish that he was innocent of any "more serious" charges forgone by the Government "in the course of plea bargaining." Bousley, 523 U.S. at 624. In United States v. Caso, 723 F.3d 215 (D.C. Cir. 2013), the Court held that the determination of what was a more serious charge would be determined by reference to the federal sentencing guidelines. [2]

In this case, the Government incorrectly argues that even if the defendants are innocent of the Obstruction of Justice charge, their claim is still barred because the prosecution gave up other

---

[2] The notion that the defendants should have to prove their innocence of other charges incorrectly assumes that a defendant would have pled to a more serious charge if they had known the offense of conviction was defective. The Court of Appeals in *Cano* noted that:

> The government suggests that, in a case in which it has forgone a more serious charge, a showing of innocence regarding that charge is required because it would have demanded a plea to the more serious charge had it known the charge of conviction was invalid. That may well be true. But surely the government would have made the same demand if the only other charge had been a less serious one, and yet the Bousley rule does not encompass such a charge. Moreover, even if the government had demanded a plea to the more serious charge, it is by no means clear that the defendant would have acceded to that demand. It is possible that he would have agreed to plead rather than go to trial, in the hope of receiving leniency from the court. But it is also possible that he would have chosen to take his chances at trial rather than plead to a more serious charge carrying the risk of a higher sentence. In short, the dynamics of plea bargaining are complicated—even more complicated if we factor in offenses of equal severity—and it is not at all clear that the "more serious" rule goes very far toward recreating the bargaining outcome the parties would likely have reached had they known the charge of conviction would be invalidated.

Cano, at 222-23. The defense also preserves its challenge to this analytical framework.

4

"more serious" charges.

The Department of Justice guidelines provide that a defendant should be required to plead to the most serious provable charge:

> Plea agreements should reflect the totality of a defendant's conduct. These agreements are governed by the same fundamental principles as are charging decisions: prosecutors will generally seek a plea to the most serious offense that is consistent with the nature and full extent of the defendant's conduct and likely to result in a sustainable conviction and proportional sentence, informed by an individualized assessment of all of the facts and circumstances of each particular case.

DOJ Principles of Federal Prosecution Section 9.27-400. Thus, *a fortiori*, the charge to which defendants DeCarlo and Ochs entered a negotiated guilty plea was the most serious charge that could have been brought in good faith. It is impossible to believe under the circumstances of this case – where the Government is aggressively pursuing literally thousands of defendants – that the prosecution forewent a greater offense as part of a plea agreement. Rather, the prosecution made the pragmatic decision to accept a plea to the Obstruction of An Official Proceeding charge because it was the most serious, provable offense. The Government should be estopped from arguing otherwise and this inquiry should be over.

This conclusion is supported even by the Government's argument that it forewent bringing a charge of Assaulting A Law Enforcement Officer pursuant to 18 United States Code Section 111(b). See Gov. Opp. at pp.22-24. The operative facts for this charge are that the defendants threw a "smoke bomb" at the "police line." In fact, the objects were "novelty" smoke cannisters, which do not appear to qualify and dangerous weapons. One of them apparently did not ignite. Moreover, the defense does not believe that the officers knew that the smoke cannisters were thrown in their direction. It is unlikely that the defendants' conduct even constituted an assault as there was no touching or reasonable ability to harm the officers. As such, the defense has grave doubts that these limited facts would have even supported the charge

5

of assaulting a police officer, let alone that the defendants would have pled guilty to the offense.

Even if the charge could have theoretically been brought, the defense does not agree with the Government's calculation of the offense level – which includes upward adjustments for both "dangerous weapon" and "official victim." Removing these upward adjustment points from the calculation results in a Total Offense Level of 13, which is well below the guideline for the Obstruction count.

Thus, under the totality of circumstances, the Government cannot establish that it forewent a more serious charge because of the plea offer in this case. [3]

## CONCLUSION

At its most fundamental level, the defendants remain incarcerated for a criminal charge that should never have been brought and which now fails as a matter of law. For all of the reasons set forth herein, defendants Nicholas DeCarlo and Nicholas Ochs accordingly request

---

[3] The Government alleges that it could have also brought a charge of Conspiracy To Impede Or Injure An Officer of the United States, in violation of 18 U.S.C. Section 372. The Government also contends that it could have brought charges for Destruction of Federal Property pursuant to 18 United States Code Section 1361. Remarkably, the prosecution argues that the property crime carries with it the possibility of a "domestic terrorist" enhancement and thus, is also a more serious charge. See Gov. Opp. at p. 27. The terrorist enhancement was not applied even in the case of defendants convicted of sedition, so the argument that it potentially applies in this case is extraordinarily misplaced. More importantly, there is no reason to believe – and no evidence in the record to even suspect– that the prosecution ever actually considered bringing this charge. Thus, as in United States v. Bousley, 523 U.S. 614, 624 (1998), the defendants do not have to prove their innocence of a charge that the Government never "elected" to bring.

that this Motion be granted, that their convictions for Obstruction of An Official Proceeding be vacated, and that while this motion is being litigated, they be released from custody.

Respectfully submitted,

*Robert Feitel*

_____
Robert Feitel, Esquire
1300 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
D.C. Bar No. 366673
202-255-6637 (cellular)
202-450-6133 (office)
RF@RFeitelLaw.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to Assistant United States Attorney (detailee) this 13th day of August, 2024.

*Robert Feitel*

_____
Robert Feitel