UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NICHOLAS DECARLO and<br>NICHOLAS OCHS,<br><br>Defendants. | Criminal Action No. 21-00073<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Defendants Nicholas DeCarlo and Nicholas Ochs both entered guilty pleas, pursuant to agreements with the government, on September 9, 2022, to one felony obstruction offense, under 18 U.S.C. §§ 1512(c)(2) and 2, stemming from their egregious conduct at the U.S. Capitol on January 6, 2021.  As part of their executed plea agreements and confirmed during their sworn colloquies with the Court, defendants agreed to waive their rights to challenge their convictions or sentences on direct appeal or via collateral attack, with only minor exceptions, none of which appear to be applicable nor is invoked here.  *See generally* Defs.' Mot. Post-Conviction Relief, ECF No. 112.[1]  On December 9, 2022, defendants were sentenced to 48 months' imprisonment on their convictions and allowed to self-surrender to the custody of the U.S. Bureau of Prisons (BOP) to begin serving their sentences.  They filed no direct appeal.

---

[1] Specifically, defendants' appeal waivers allowed them to appeal or attack collaterally their convictions or sentences if based on newly discovered evidence, a claim of ineffective assistance of counsel, or relief sought under 18 U.S.C. § 3582(c)(2).  Plea Agreement Nicholas DeCarlo ("DeCarlo Plea Agreement") ¶¶ 10(C), (D), ECF No. 77; Plea Agreement Nicholas Ochs ("Ochs Plea Agreement") ¶¶ 10(C), (D), ECF No. 81; *see also* Gov't's Opp'n Defs.' Request Release Pending Adjudication Mot. Under 28 U.S.C. § 2255 ("Gov't's Opp'n Release") at 7, ECF No. 117.

1

Nineteen months to the day after defendants' sentences were imposed, defendants moved for post-conviction relief under 28 U.S.C. § 2255, seeking vacatur of their convictions and accompanying sentences, and for immediate release pending resolution of their § 2255 motion. Defs.' Mot. Post-Conviction Relief, ECF No. 112.  Separate briefing schedules were set on the two requests contained in defendants' motion, directing the government to first respond to defendants' request to be "released from custody while [their] motion is pending," Min. Order, July 25, 2024, and separately to defendants' request to vacate their convictions under § 2255, *see id.*

Now fully briefed and pending before the Court is defendants' motion for release pending resolution of their § 2255 motion, which the government opposes.  *See* Gov't's Opp'n Defs.' Request Release Pending Adjudication Mot. under 28 U.S.C. § 2255 ("Gov't's Opp'n Release"), ECF No. 117.  For the reasons stated below, defendants' motion for release pending resolution of their pending § 2255 motion is DENIED.[2]

## I.  BACKGROUND

Defendants pled guilty to one felony count of obstruction, in violation of 18 U.S.C. §§ 1512(c)(2) and 2, on September 9, 2022.  *See* Min. Entry, Sept. 9, 2022; Plea Agreement Nicholas DeCarlo ("DeCarlo Plea Agreement"), ECF No. 77; Plea Agreement Nicholas Ochs ("Ochs Plea Agreement"), ECF No. 81.  The factual basis for their guilty pleas was set out in Statements of Offense, executed by counsel to the government and defendants, as well as defendants themselves, *see* Statement Offense Nicholas DeCarlo ("DeCarlo SOF"), ECF No. 79; Statement Offense Nicholas Ochs ("Ochs SOF"), ECF No. 82, and confirmed under oath by each defendant in

---

[2]  Defendants' motion to vacate their convictions is not yet ripe for consideration.  *See* Min. Order, July 25, 2024 (directing that briefing be completed by September 16, 2024).

response to the Court's inquiries, *see* Plea Colloquy Tr. at 18:17–19:16, 27:11–27:24, Sept. 9, 2022, ECF No. 116. Defendants' SOFs in support of their guilty pleas were supplemented by submission by the government of thirty exhibits of photographs and videos captured on defendants' electronic devices, as well as U.S. Capitol Police closed circuit video. *See* U.S. Rep. Regarding Video Evidence Described in Statement of Offense ("SOF Video Evid."), ECF No. 74. These facts are briefly summarized as follows.

DeCarlo traveled from Fort Worth, Texas, and Ochs from Honolulu, Hawaii, to arrive in Washington, D.C., on January 5, 2021. DeCarlo SOF ¶ 8; Ochs SOF ¶ 9. Ochs is the founder of the Hawaii chapter of the Proud Boys. Ochs SOF ¶ 8. They expressed their reasons for traveling to D.C. in terms that anticipated violence, with DeCarlo saying that he wanted to "expose those 'tolerant' leftists for their lies and teach them a lesson they'll NEVER forget: The MAGA TRAIN will KEEP ON ROLLIN'! TRUMP 2020 BABAAAY!" DeCarlo SOF ¶ 8. For his part, Ochs said that he came to D.C. because "the president asked and said it was gonna be wild and that people should wear body cameras." Ochs SOF ¶ 9. Both men attended former President Trump's "Stop the Steal" rally on January 6, 2021, and then joined the crowd marching to the Capitol. DeCarlo SOF ¶ 9; Ochs SOF ¶ 10.

As they approached the Capitol building, DeCarlo, filming on a GoPro, said, "this is where they are going to steal it. And they called on us. They called on us to stop it. We are putting an end to it. They said calling all patriots . . . . We're going to put the kai-bosh on this." DeCarlo SOF ¶ 10; SOF Video Evid., Ex. 8. Ochs said, "the steal is in fact right here and we are going to stop it." Ochs SOF ¶ 11; SOF Video Evid., Ex. 8. After passing through restricted grounds and reaching the west side of the U.S. Capitol Building, where preparations were underway for the upcoming presidential inauguration, Ochs told DeCarlo, still filming on his GoPro, "we're not

3

supposed to be here, this is beyond the fence," and DeCarlo responded, "we're all felons, yeah!" DeCarlo SOF ¶ 11; Ochs SOF ¶ 12; SOF Video Evid., Ex. 8. As police tried to keep the crowd away from the Capitol building, both defendants threw smoke bombs at the police line. DeCarlo SOF ¶ 12; Ochs SOF ¶ 13; SOF Video Evid., Ex. 12.

Both defendants entered the Capitol building through the Senate Wing doors at approximately 2:23 pm. DeCarlo SOF ¶ 13; Ochs SOF ¶ 14. A video obtained from a flash drive owned by DeCarlo shows Decarlo, once inside the building, yelling out asking about the location of then-Speaker of the House Nancy Pelosi, DeCarlo SOF ¶ 14; SOF Video Evid., Ex. 18, and as Capitol police officers sought to cut off access to parts of the Capitol by closing crash doors, both defendants "encouraged and recorded" the efforts of other rioters to block the doors, DeCarlo SOF ¶ 15; Ochs SOF ¶ 16; *see also* SOF Video Evid., Exs. 20, 21. Both defendants continued to travel throughout the building, meeting up with other rioters, including Proud Boys Ethan Nordean, Paul Rae, and at least one other person, along the way, DeCarlo SOF ¶ 16; Ochs SOF ¶ 17, and pointing out Pelosi's office to groups of rioters who gathered there, DeCarlo SOF ¶ 17; Ochs SOF ¶ 18. Ochs used his cell phone to film DeCarlo writing "Murder the Media," the name of defendants' social media channel, on the Chestnut-Gibson Memorial Door to the Capitol in permanent marker, DeCarlo SOF ¶ 18; Ochs SOF ¶ 19; SOF Video Evid., Ex. 30, and both men posed for photos with the graffiti, DeCarlo SOF ¶ 18; Ochs SOF ¶ 19; SOF Video Evid., Ex. 31.

During their time in the building, defendants found a Capitol Police duffel bag and stole a pair of flexcuffs from inside it. DeCarlo SOF ¶ 19; Ochs SOF ¶ 20; SOF Video Evid., Ex. 31. Leaving the Capitol, Ochs, in a video filmed on his cell phone, said, "sorry we couldn't go live when we stormed the fuckin' U.S. Capitol and made Congress flee." Ochs SOF ¶ 22; SOF Video Evid., Ex. 32. In another video filmed by Ochs, both defendants celebrated the fact that their

4

conduct contributed to Congress stopping its certification of the electoral college due to the riot. Ochs said, "it may resume, but the steal is for now stopped," while DeCarlo said, "we did it," "that's what I came down here to do," and "we did it. We did our job." DeCarlo SOF ¶ 21; Ochs SOF ¶ 23; SOF Video Evid., Ex. 33.

At the sentencing hearing on December 9, 2022, defendants' applicable advisory guidelines sentencing range was determined to be 41 to 51 months' imprisonment, Sentencing Tr. at 9:20–10:12, Dec. 9, 2022, ECF No. 110, based on finding that both defendants were in Criminal History Category I and had a total offense level of 22, *id.* at 9:14–19, 10:8–12. Specifically, U.S.S.G. § 2J1.2(a) applied to both defendants' felony obstruction conviction, providing a base level of 14 points. *Id.* at 9:20–24. Eight levels were added, pursuant to U.S.S.G. § 2J1.2(b)(1)(B), "for threatening or causing injury or property damage to obstruct the administration of justice," *id.* at 9:24–10:2, and another three were added, under U.S.S.G. § 2J1.2(b)(2), for "substantial interference with the administration of justice," *id.* at 10:2–10:5. Finally, three points were subtracted for defendants' acceptance of responsibility, under U.S.S.G. § 3E1.1, *id.* at 10:6–8, resulting in a total offense level of 22 for both defendants, *id.* at 10:8–9. Defendants had agreed in their plea agreements that both enhancements, under U.S.S.G. § 2J1.2(b)(1)(B) and (2), applied in their case, *see* DeCarlo Plea Agreement ¶ 5(A); Ochs Plea Agreement ¶ 5(A), and thus neither defendant objected to the application of any enhancements or to the calculation of their sentencing guidelines, Sentencing Tr. at 10:16–22.

Both defendants were sentenced at the higher end of the advisory sentencing range to 48 months' imprisonment, to be followed by terms of supervised release of 36 months. *Id.* at 71:11–18, 76:4–10. Both defendants requested that they be allowed to self-surrender to BOP custody, and this request was granted without objection from the government. *Id.* at 81:18–23.

5

Neither defendant filed a direct appeal in the case. Over six months later, on June 28, 2024, the Supreme Court issued *Fischer v. United States*, 603 U.S. --, 144 S. Ct. 2176 (2024), holding that 18 U.S.C. § 1512(c)(2) criminalizes "obstruct[ing], influenc[ing], or imped[ing] any official proceeding," *id.* at 2181 (quoting 18 U.S.C. § 1512(c)(2)), only if the "defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so," *id.* at 2190. Given the narrowed scope of the statutory provision to which they pled guilty, defendants sought vacatur of their convictions, under 28 U.S.C. § 2255, arguing that *Fischer* "cast[] . . . grave doubt on the validity of the indictments" against them and rendered their plea agreements "void." Defs.' Mot. Post-Conviction Relief at 4. Defendants also asked to be released from custody while their § 2255 motion is pending resolution, *id.* at 6, which request is now ripe for resolution.

## II.    LEGAL STANDARD

In a proceeding filed under 28 U.S.C. § 2255, courts have the "inherent power" to order the release of a criminal defendant "pending determination of the merits" of his § 2255 claim. *United States v. Kelly*, 790 F.2d 130, 139 (D.C. Cir. 1986) (quoting *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969)). The standard for such requests, however, is more stringent than release pending direct appeal; defendants must satisfy "a heightened standard requiring a showing of exceptional circumstances." *Id.* (quoting *Baker*, 420 F.2d at 1343) (omission in original); *see also Aronson v. May*, 85 S. Ct. 3, 5 (1964) (holding that an incarcerated person seeking bail pending a collateral attack must meet a "greater showing of special reasons" and that, "in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice"). This standard has been interpreted as a two-pronged test, assessing whether (1) the underlying § 2255

petition raises a substantial question of law, and (2) the motion for release pending resolution of the § 2255 claim is based on "exceptional" circumstances deserving special treatment. *See, e.g.*, *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990); *United States v. Dade*, 959 F.3d 1136, 1138 (9th Cir. 2020) (holding that the "requisite showing" for release pending appeal of a denial of a § 2255 motion requires showing "special circumstances or a high probability of success" and "exceptional circumstances" (quoting *United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1995))); *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (explaining that to meet the "difficult" standard for bail pending habeas litigation, a petitioner "must demonstrate that the habeas petition raises substantial claims and that extraordinary circumstances exist . . . ." (quoting *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990))) (cleaned up).[3]

Notably, the "Bail Reform Act does not apply to convicted defendants seeking postconviction relief," *Kelly*, 790 F.2d at 139 (citing *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985)), and motions for release pending resolution of a § 2255 petition are "measured against a heightened standard" when compared to motions for release pending appeal, under the Bail Reform Act provision codified at 18 U.S.C. § 3143, *Baker*, 420 F.2d at 1343; *see also Cherek*, 767 F.2d at 337–38 (finding that, although § 3143(b)(1) is "inapplicable" to motions for release pending resolution of a § 2255 motion, because § 3143(b) provides a "more favorable standard," a defendant who cannot satisfy § 3143(b)(1) could not satisfy the more exacting requirements for release pending § 2255). Nevertheless, the D.C. Circuit's definition of a substantial question in § 3143(b)(1)(B) as "a close question or one that very well could be decided the other way," *United*

---

[3] This two-pronged test in evaluating motions for release pending resolution of a § 2255 motion has been applied by the undersigned and other Judges on this Court. *See United States v. Stottlemyer*, No. 21-cr-334-2 (TJK), 2024 WL 1076852, at *3 (D.D.C. Mar. 8, 2024) (applying this standard to a motion for release pending resolution of a § 2255 petition); *Meskel v. United States*, No. CRIM.A. 04-0053 (RMU), 2005 WL 1903375, at *2 (D.D.C. July 13, 2005) (same); *United States v. Lyons*, No. 21-cr-79 (BAH), 2024 WL 3898550, at *4–*8 (D.D.C. Aug. 22, 2024) (same).

7

*States v. Perholtz*, 836 F.2d 554, 555–56 (D.C. Cir. 1987), provides useful guidance in the § 2255 context.

## III. DISCUSSION

Defendants claim that release pending resolution of the § 2255 motion is "necessary and appropriate under the unique circumstances of this case," Defs.' Mot. Post-Conviction Relief at 6, citing the obvious impact that *Fischer* has on the felony obstruction statute to which they pled guilty. The government counters by arguing that a focus on *Fischer* is incorrect, given the defendants' waivers of their appeal rights, and, as refocused on the enforceability of their waivers, defendants raise "neither a substantial claim nor exceptional circumstances." Gov't's Opp'n Release at 2 (arguing that, "regardless of whether *Fischer* raises a question as to the viability of pending § 1512(c)(2) charges, these defendants are in a different posture" because "they unambiguously waived their right to file a § 2255 motion"). In this case, defendants fail to demonstrate either that their § 2255 motion raises a substantial question of law or that exceptional circumstances exist to justify their release.

### A. Substantial Question of Law

Defendants present three challenges to their convictions that they argue raise a substantial question of law, arguing (1) the indictment in their case was "void *ab initio*," by failing to allege, as now required by *Fischer*, that they "corruptly intended to interfere with documents in connection with the electoral vote certification," Defs.' Mot. Post-Conviction Relief at 1–2, 4; (2) their guilty pleas are invalid because they were not adequately informed of an essential element of the obstruction charge, as now outlined in *Fischer*, and their Statements of Fact provide an insufficient factual basis to find them guilty of felony obstruction, under 18 U.S.C. § 1512(c)(2), *id.* at 4–6; and (3) they are "actually innocent" of the crime of felony obstruction under *Fischer*'s

8

new construction of the statute, Defs.' Reply Supp. Mot. Post-Conviction Relief ("Defs.' Reply") at 1–4, ECF No. 118.  In short, all three challenges rely on *Fischer* to argue that the actions for which defendants pled guilty were not crimes under § 1512(c)(2), and thus defendants are innocent.  *See* Defs.' Mot. Post-Conviction Relief at 1–5; Defs.' Reply at 1 (referencing "the clear mandate of the Supreme Court's decision in *Fischer*").

To be sure, the undersigned and other Judges on this Court have concluded in other cases stemming from offense conduct at the U.S. Capitol on January 6, 2021, that *Fischer* raises a substantial question of law qualifying for release pending direct appeal, under 18 U.S.C. 3143(b)(1),  as to defendants "convicted of a single felony Section 1512(c)(2) charge . . . when the defendant had already served close to or more than twelve months in prison."  *United States v. Roche*, No. 22-cr-86 (BAH), 2024 WL 1328459, at *3 (D.D.C. Mar. 28, 2024); *see also, e.g.*, *United States v. Sheppard*, No. 21-cr-203 (JDB), 2024 WL 127016, at *3 (D.D.C. Jan. 11, 2024); *United States v. Weyer*, No. 22-cr-40 (JEB), 2024 WL 809962, at *3 (D.D.C. Feb. 27, 2024); *United States v. Adams*, No. 21-cr-354 (APM), 2024 WL 111802, at *2 (D.D.C. Jan. 10, 2024); *accord United States v. Lyons*, No. 21-cr-79 (BAH), 2024 WL 3898550 (D.D.C. Aug. 22, 2024) (granting defendant prospective release pending resolution of his § 2255 motion challenging a felony obstruction conviction, where he raised a significant claim of ineffective assistance of counsel for failing to file a direct appeal following a trial on stipulated facts, with no waiver of his appellate rights).  In all of those cases, however, the defendants had taken steps to preserve their right to appeal their felony obstruction conviction and sentence by proceeding with trials, either before a jury or on stipulated facts, and declining plea offers made by the government.  In stark contrast, here, defendants explicitly waived their right to appeal directly and to attack collaterally

9

their convictions and sentences.  *See* DeCarlo Plea Agreement ¶¶ 10(C), (D); Ochs Plea Agreement ¶¶ 10(C), (D); Plea Colloquy Tr. at 15:19–17:8.

In this case, the government seeks to enforce the collateral attack waiver provision in defendants' plea agreements.  *See* Gov't's Opp'n Release at 2, 11.  In general, courts enforce waivers in plea agreements if (1) the waivers are valid, and (2) the scope of the waiver covers the appeal or collateral attack defendants seek to advance.  *United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016); *see also United States v. Koontz*, No. 16-cr-16 (EGS), 2024 WL 3225980, at *5–*6 (D.D.C. June 28, 2024).  Courts view such waivers as a valuable "additional bargaining chip" for defendants to use to negotiate a plea agreement, *United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009); *Khadr v. United States*, 67 F.4th 413, 421 (D.C. Cir. 2023); *United States v. Powers*, 885 F.3d 728, 733 (D.C. Cir. 2018), and thus favor enforcing them to "improve[] . . . the defendant's bargaining position and increase[] . . . the probability he will reach a satisfactory plea agreement with the Government," *Guillen*, 561 F.3d at 530.  For a waiver to be valid, it must be knowing, intelligent, and voluntary.  *Khadr*, 67 F.4th at 419; *Powers*, 885 F.3d at 733 ("We . . . enforce a bargained-for appeal waiver unless the defendant enters into it unknowingly, unintelligently, or involuntarily."); *see also United States v. Vigil-Benitez*, No. 22-3031, 2023 WL 6939238, at *1 (D.C. Cir. Oct. 20, 2023) (per curiam).

The government's argument that defendants' collateral attack waiver should be enforced presents threshold legal issues as to the enforceability and consequences of the waiver that may render defendants' arguments under *Fischer* irrelevant, no matter how substantial.  Put another way, if defendants validly waived the right to file a § 2255 motion, judicial review of their substantive arguments for vacatur of their felony obstruction convictions and sentences would be improper.  *See Khadr*, 67 F.4th at 418–19 ("A dismissal based on an appeal waiver is a

determination that the merits may not be reached . . . ."); *United States v. Ortega-Hernandez*, 804 F.3d 447, 451 (D.C. Cir. 2015) (holding that a valid, enforceable appeal waiver means courts "should not consider" the merits of the underlying appeal); *see also, e.g.*, *In re Sealed Case*, 40 F.4th 605, 607–09 (D.C. Cir. 2022) (dismissing an appeal due to a valid appeal waiver without considering the merits of the claim raised on appeal). If defendants' substantive arguments based on *Fischer* may not be considered due to waiver, then defendants fail to raise the requisite substantial legal question to meet the first prong for release pending resolution of their § 2255 motion. Put another way, the question of enforceability is inextricably intertwined with the briefing on the merits of defendants' underlying § 2255 motion, which has not been completed and is thus not yet ripe for consideration. *See supra* at n.2. Until the enforceability of defendants' waivers is determined, whether defendants' claims under *Fischer* present substantial legal questions may neither be reached nor resolved.

This reasoning is consistent with that in *United States v. Stottlemyer*, No. 21-cr-334-2 (TJK), 2024 WL 1076852 (D.D.C. Mar. 8, 2024), where another Judge on this Court denied the defendant's motion for release pending resolution of her § 2255 motion, *id.* at *5, which claimed ineffective assistance of counsel (IAC) for failure to appeal her conviction based on the dissent in the D.C. Circuit's opinion in *Fischer*, *id.* at *3–*4. There, the Court wrote that defendant's claim under *Fischer* could not have given defendant's counsel a "nonfrivolous" basis for appeal, since the appeal waiver she agreed to as part of her plea agreement barred appealing her conviction on the ground that "the admitted conduct d[id] not fall within the scope of the statute." *Id.* (alteration in original). Instead, the challenge would have been frivolous, barred by the appeal waiver that "specifically precluded" such an appeal. *Id.* at *4 (quoting *United States v. Robinson*, No. 10-cr-310 (RCL), 2017 WL 3446759, at *3 (D.D.C. Aug. 9, 2017)). Defendants in this case agreed to

11

waivers of appeal and collateral attack identical to the one at issue in *Stottlemyer*. Here, as in *Stottlemyer*, if defendants' challenge to their convictions is barred by their waiver of collateral attack set out in their plea agreements, their *Fischer* challenges would be "specifically precluded," and, since the merits of those challenges would then not be reached, *see Khadr*, 67 F.4th at 418–19, they could not raise the substantial legal questions they have so far identified.

As to the threshold legal question whether defendants' § 2255 motion is barred by the plea agreements' waiver provision, defendant raises little argument at this procedural juncture, let alone a basis, given the significant weight of decisions supporting the enforceability of appeal and collateral attack waivers, to find this question is even sufficiently "close," *see Perholtz*, 836 F.2d at 556, to raise a substantial legal question. Consequently, defendants have fallen short of showing that their § 2255 motion presents a threshold substantial question of law to satisfy the requirements for release pending resolution of their § 2255 motion.

### B. Exceptional Circumstances

In addition, defendants fail to show exceptional circumstances exist in this case. They argue merely that the circumstances of this case are "unique" because the Supreme Court "overturned the legal theory of the defendants' convictions and there is no basis in the Statement(s) of Fact to even remotely suggest that their conduct renders them guilty of the Obstruction statute." Defs.' Mot. Post-Conviction Relief at 6. Even if true, however, these facts do not rise to the level of exceptional or unique such that they merit the special treatment of releasing defendants pending resolution of their § 2255 motion.

For circumstances to be exceptional, they must be rare. *See Kelly*, 790 F.2d at 139 ("[T]he power to grant bail pending resolution of a § 2255 proceeding is to be exercised very sparingly." (citing *Cherek*, 767 F.2d at 337)); *Dotson*, 900 F.2d at 79 (explaining that most motions for bail

pending habeas review will fail because "[t]here will be few occasions where a prisoner will meet [the] standard"); *see also Exceptional*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/exceptional (last visited Sept. 4, 2024) (defining "exceptional" as "forming an exception: rare" or "deviating from the norm."). Something cannot be "exceptional" if it is fairly common or normal.

The facts defendants present to argue their case is "unique" are not particularly rare, and defendants present no additional information that would distinguish their legal predicament or individual circumstances from the myriad of other cases that present similar legal issues. Essentially, defendants' § 2255 motion raises the legal question whether their collateral attack waiver provisions in their plea agreements operate to bar their challenges to their convictions and sentences based on a subsequent change in law due to a decision by the Supreme Court. This is not a particularly rare occurrence. The Supreme Court has occasionally narrowed the interpretation of existing criminal laws, leaving defendants who previously pled guilty to offenses under more expansive interpretations of the law at issue to question the validity of their convictions and sentences. Such a reinterpretation happened only five years ago in *United States v. Davis*, 588 U.S. 445 (2019), when the Supreme Court limited the scope of "crimes of violence," under 18 U.S.C. § 924(c). In the wake of this decision, numerous defendants who had pled guilty under the old interpretation of § 924(c) sought to have their sentences vacated despite collateral attack waivers contained in their plea agreements. *See, e.g.*, *United States v. Luis*, No. 16-cv-2405 (JMA), 04-cr-939 (JMA), 2023 WL 4373562 (E.D.N.Y. July 6, 2023); *Rudolph v. United States*, 551 F. Supp. 3d 1270 (N.D. Ala. 2021); *Richardson v. United States*, No. 19-cv-1499 (MPS), 2021 WL 736416 (D. Conn. Feb. 25, 2021); *United States v. Gregory*, No. 07-cr-73-JED, 2020 WL 5751617 (N.D. Okla Sept. 25, 2020); *United States v. Barker*, 20-cr-355-AN, 2023 WL 8189756 (D. Or.

Nov. 27, 2023). As the government notes, courts around the country have had to consider whether collateral attack waivers are enforceable in such a scenario, *see* Gov't's Opp'n Release at 14–18 (citing *Portis v. United States*, 33 F.4th 331 (6th Cir. 2022); *Cook v. United States*, 84 F.4th 118 (2d Cir. 2023); *United States v. Goodall*, 21 F.4th 555 (9th Cir. 2021), *cert denied*, 142 S. Ct. 2666 (2022))—exactly the question raised by defendants' attempts to challenge their convictions under § 2255. While the waiver enforceability issue is not yet resolved in this case, what is pertinent in considering whether defendants qualify for release pending such resolution is that questions about the scope and enforceability of appeal and collateral attack waivers after subsequent changes in law arise with some regularity—including in scenarios closely analogous to the facts of the instant case. The frequency and similarities of these cases strongly suggest that defendants' circumstances, though difficult, do not qualify as "exceptional" in a legally meaningful way.

Defendants point to the government's decision in *United States v. Riley*, 21-cr-69 (APM) (D.D.C.), not to oppose the defendant's motion for release pending resolution of his § 2255 motion, where the *Riley* defendant, just as defendants here, had entered into a plea agreement containing the identical collateral attack waiver provision. Defs.' Reply at 1–2. According to defendants, the government's decision in *Riley* "raises a question as to the reason for the disparate treatment," since the defendants in both cases "appear to be similarly situated." *Id*. at 2.

Just as a defendant has the right to waive appellate and collateral attack rights, the government may choose whether to seek to enforce such waivers. *See, e.g.*, *United States v. Little*, 78 F.4th 453, 461 n.8 (D.C. Cir. 2023) (noting that "[b]ecause the Government 'opted not to enforce' [the defendant's] waiver, we need not decide whether [the defendant] reserved the right to bring this appeal"); *Ortega-Hernandez*, 804 F.3d at 451 ("[W]e need not enforce an appeal waiver when the government has not asked us to do so"); *United States v. Story*, 439 F.3d 226, 231

14

(5th Cir. 2006) (holding that if the government does not object to the defendant's appeal based on his appeal waiver, the waiver is no longer binding "because the government has waived the issue"). Yet, defendants suggest here that the government is treating similarly situated defendants disparately, which may raise legal issues requiring additional scrutiny. In response, the government has vigorously outlined factual differences between the instant case and *Riley*. *See* Gov't's Opp'n Release at 12 n.3.

For example, in this case, the government "forwent several charges of equal or greater seriousness" to the felony obstruction charge as part of the plea negotiations, *id.* at 11, including agreeing not to charge defendants with "using a deadly or dangerous weapon in the course of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal officer," in violation of 18 U.S.C. § 111(b), *id.* at 22; conspiracy in violation of 18 U.S.C. § 372, *id.* at 24–25; and "destruction of federal property and aiding and abetting," in violation of 18 U.S.C. §§ 1361 and 2, *id.* at 27.[4]  In *Riley*, in contrast, "to the government's knowledge, [the defendant] did not assault officers or commit other crimes of equal or greater seriousness," and the government only dismissed charges, as part of the plea negotiations, for "the four standard misdemeanors" that most defendants charged with offense conduct at the U.S. Capitol on January 6, 2021, faced. *Id.* at 12 n.3. This distinction is legally relevant because defendants here would have to prove actual innocence, the standard that applies to habeas claims that are procedurally defaulted for failure to raise them on direct appeal, of both the convicted conduct and any foregone charges of equal or more seriousness. *See Bousley v. United States*, 523 U.S. 614, 622, 624 (1998)

---

[4] Defendants were originally charged, in Count Three of the First Superseding Indictment, with violating 18 U.S.C. §§ 1361 and 2, *see* First Superseding Indictment at 8, ECF No. 68, but were never formally charged with violating 18 U.S.C. §§ 111(b) and 371. According to the government, defendants were provided with the evidence supporting additional felony charges, which prompted plea negotiations that were successfully concluded with the government agreeing not to charge the additional felony violations. *See* Gov't's Opp'n Release at 6.

15

(holding that defendants who procedurally default a claim "by failing to raise it on direct review" must show either cause and prejudice or actual innocence, and ruling that, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges"). Defendants would face a far more demanding standard than the defendant in *Riley*, who apparently pled guilty to the most serious felony charge against him, which charge subjected him to the most severe penalty, including under the advisory sentencing guidelines, and thus he would have to prove actual innocence of only that convicted conduct. This is not the situation confronting defendants, who, to show actual innocence, would have to make additional showings of actual innocence for up to three additional felony charges that were foregone and may carry equal or greater seriousness than their charge of conviction.

Again, however, the contested question whether the foregone charges by the government were of equal or greater seriousness, *see* Gov't's Opp'n Release at 3, 11, 22–30; Defs.' Reply at 4–6, is not resolved at this procedural juncture since this issue is also closely linked to the merits of defendants' § 2255 motion, *see* Gov't's Opp'n Release at 11 (arguing *Bousley* is significant because it establishes the standard for actual innocence for a claim that is procedurally defaulted— an issue relating to the underlying § 2255 motion), which is not ripe for consideration, *see supra* at n.2. In any event, any implicit concession by the government that exceptional circumstances existed in *Riley*, *see Lyons*, 2024 WL 3898550, at *8, do not help the instant defendants to meet their burden to show exceptional circumstances exist here.

## IV.   CONCLUSION

Defendants have failed to show either a substantial question of law as to the threshold issue of the enforceability and consequences of their appeal and collateral attack waivers in their plea

agreements, or exceptional circumstances to justify release pending resolution of their motion to vacate their felony obstruction convictions and sentences, pursuant to 28 U.S.C. § 2255. Accordingly, defendants' request for immediate release pending resolution of their Motion for Post-Conviction Relief, ECF No. 112, is **DENIED**.  An order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: September 4, 2024

_____
**BERYL A. HOWELL**
United States District Judge